# IN THE DISTRICT COURT OF TEXAS COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| FRED A. FISCHER, AS GENERAL PARTNER OF FISCHER FAMILY FARMS FAMILY LIMITED PARTNERSHIP AND ROGER A. FISCHER, AS AGENT FOR THE ALLAN AND CAROLYN FISCHER FAMILY LIMITED PARTNERSHIP **FOR THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,**<br><br>        PLAINTIFFS,<br><br>VS.<br><br>EXXON MOBIL CORPORATION; THE POSTLE UPPER MORROW UNIT; AND THE HOVEY MORROW UNIT; BOTH INDIVIDUALLY AND AS REPRESENTATIVES OF ALL OTHER EXXON MOBIL-OPERATED UNITS CREATED PURSUANT TO 52 OKLAHOMA STATUTES §287.1 THROUGH 287.15,<br><br>        DEFENDANTS. | CASE NO. ___CJ-02-125___<br><br><br>**TEXAS COUNTY**<br>**F I L E D**<br><br>DEC 2 0 2002<br><br>**KAREN PARISH**<br>**COURT CLERK** |

## PETITION

COME NOW the Plaintiffs, Fred A. Fischer, as General Partner of the Fischer Family Farms Limited Partnership; and Roger A. Fischer, as Agent for the Allan and Carolyn Fischer Family Limited Partnership (hereinafter "Fischer"), for themselves and all others similarly situated, (collectively "Plaintiff Class") and for their cause of action, allege and state as follows:

### PARTIES, JURISDICTION AND VENUE

The parties to this action are as follows:

**EXHIBIT 2**

1.      Plaintiff Fred A. Fischer is a resident of Texas County, State of Oklahoma and is a General Partner in the Fischer Family Farms, F.L.P., an Oklahoma family limited partnership, having its principal place of business in Texas County, Oklahoma.

2.      Plaintiff Roger A. Fischer is a resident of Texas County, State of Oklahoma and is agent for the Allan and Carolyn Fischer Family Limited Partnership, an Oklahoma family limited partnership, having its principal place of business in Texas County, Oklahoma.

3.      All of the Fischer claims arose in Texas County, Oklahoma.

4.      Exxon Mobil Corporation ("Exxon Mobil") is a New Jersey corporation with its principal place of business in Houston, Texas.   Exxon Mobil is the surviving corporation created by the merger of Mobil Oil Corporation (Mobil) and Exxon Corporation (Exxon).   Said merger occurred on or about November 30, 1999.

5.      The Postle Upper Morrow Unit ("Postle Unit") and the Hovey Morrow Unit ("Hovey Unit") are each an Oklahoma "body politic and corporate" created pursuant to Title 52 Oklahoma Statutes §§ 287.1 through 287.15, inclusive.   The Postle Unit and the Hovey Unit are field-wide oil and gas production units operated by Exxon Mobil and are representative of all such units operated by Exxon Mobil in the State of Oklahoma.

6.      Prior to the merger creating Exxon Mobil, Exxon and Mobil each operated oil and gas wells and owned interests in other wells and/or field wide units in Texas County and throughout Oklahoma.   After the merger, Exxon Mobil assumed operations and/or ownership of interests in these wells in which the Plaintiffs and/or the remaining Class members are or were royalty owners. Hereafter, all references to Exxon Mobil's operations and ownership shall include the operations and ownerships of Exxon and Mobil prior to the merger.

2

7.    Plaintiffs each own oil, gas and other minerals underlying numerous sections in Texas County, Oklahoma, which are subject to oil and gas leases pursuant to which wells were drilled on governmentally sanctioned units.  The Allan and Carolyn Fischer, F.L.P. owns oil, gas and other minerals underlying the Postle Unit and the Hovey Unit.  Exxon Mobil, as operator and a working interest owner, drilled, completed and produced well(s) on such unit(s) and has distributed royalties on the well(s).

8.    The remaining Class members own or have owned oil, gas and other minerals underlying tracts of land in Oklahoma which  are subject to oil and gas leases and/or pooling orders of the Oklahoma Corporation Commission pursuant to which Exxon Mobil is/was a working interest owner in oil and gas wells, and/or operated oil and gas wells within spacing and/or field-wide units which encompass such minerals.

9.    In the operation and production of the Exxon Mobil Wells and the marketing of minerals produced from said wells, Exxon Mobil acted as the agent, joint venturer and mining partner for other unnamed individuals and entities owning interests in the Exxon Mobil wells.

10.    Upon information and belief, the amount in controversy, exclusive of attorney's fees, litigation expenses, costs and interest,  exceeds the sum of $10,000.00.

11.    Pursuant to Oklahoma Statutes and the Oklahoma Constitution, venue and jurisdiction properly lie in the District Court of Texas County, State of Oklahoma.

## CLASS ACTION ALLEGATIONS

The allegations set forth above are incorporated herein by reference.

12.    The Plaintiffs bring this action as the representative of a class pursuant to 12 O.S. § 2023 for all similarly situated mineral interest owners in the State of Oklahoma.

3

13.     The Class numbers at least in the hundreds and probably over one thousand members; the members reside in many different states; and the Plaintiff Class is so numerous and spread out across the United States that joinder of all members is impracticable.

14.     This action is governed by Oklahoma law.

15.     The averments of fact and questions of law herein are common to the Class.

16.     Plaintiffs' claims are typical of the Class claims.

17.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs' interests do not conflict with the interests of the Class.  Plaintiffs are represented by counsel both skilled and experienced in oil and gas accounting and complex civil litigation matters, including oil and gas royalty class actions.  Counsel are accustomed to handling substantial litigation matters.

18.     The averments of fact and questions of law herein which are common to the members of the Class predominate over any questions affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The superiority of a class action is because:

      a.      The questions of law and fact are so uniform across the Class that there is no reason why individual Class members would want to control the prosecution of their own actions, at their own expense;

      b.      To Plaintiffs' knowledge, there is no pending  litigation by any individual Class members, with the same scope of Class membership sought herein, against Exxon Mobil relating to improper deductions from royalties, failure to pay royalties on the proceeds Exxon Mobil received for the sale of gas, hydrocarbons and other minerals, and the fraudulent self-dealing by Exxon Mobil.

      c.      The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions is great;

4

d.   The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every class member, and not just those who can afford to bring their own actions; and,

e.   The Defendants have fraudulently concealed their actions which give rise to the Class members' cause of action. Many, if not all, of the Class members may never discover the wrongful acts of the Defendants. Thus in the absence of a class action, Defendants, through their concealment, may successfully be unjustly enriched by millions of dollars to the detriment of the unknowing Class members.

19.   For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

The allegations set forth above are incorporated herein by reference.

20.   During the times at issue herein, Exxon Mobil drilled and operated numerous wells located in Texas County and throughout the State of Oklahoma.   In addition, Exxon Mobil participated in the drilling, completion and producing of various other wells in Texas County and throughout the State of Oklahoma wherein Exxon Mobil was not the operator.   These wells include those within the Postle Unit and the Hovey Unit, as well as other statutorily-created field-wide units. Collectively, these wells are hereinafter referred to as the "Exxon Mobil Wells" and the term "Exxon Mobil" shall include the Postle Unit, the Hovey Unit, and all other such Units operated by Exxon Mobil in the State of Oklahoma.

21.   The Exxon Mobil Wells were drilled on units organized and created pursuant to the oil and gas leases and Oklahoma Statutes.

22.    The relationship between (1) Exxon Mobil and (2) Plaintiff Class is such that the Plaintiff Class has reasonably placed trust and confidence in Exxon Mobil.

23.    Exxon Mobil has superior access to information relating to the claims herein.

24.    Exxon Mobil has superior bargaining power *vis a vis* Plaintiff Class.

25.    Exxon Mobil is in a fiduciary relationship with Plaintiff Class created by the oil and gas leases, pooling orders and the unitization orders of the Oklahoma Corporation Commission, and by virtue of the historical relationship of the parties.

26.    As a fiduciary, Exxon Mobil is 1) held accountable to Plaintiff Class, 2) held to a high degree of good faith in their dealings, and 3) not permitted to make use of the fiduciary relationship to realize unauthorized benefits or profits to its own personal interests at the expense of Plaintiff Class.

27.    Exxon Mobil has used its position as a fiduciary and operator of the Exxon Mobil Wells to skim moneys rightfully belonging to the Plaintiff Class.

28.    Exxon Mobil wrongfully deducted from royalties, and in some instances paid Exxon Mobil's related companies, a fee for gathering, compressing, dehydrating, field fuel, treating and/or transporting and marketing Exxon Mobil's gas (including all of the gas for which Exxon Mobil retained the marketing rights and the gas of those owners for whom Exxon Mobil acted as the agent, joint venturer and mining partner) from the production equipment located at the well site of the Exxon Mobil Wells to a market, without regard to the location of that market and even when the delivery to market was within the unit. All fees charged and deducted from the gross value of the gas from the Exxon Mobil Wells for gathering, compression, dehydration, field fuel, marketing and similar services are hereinafter referred to as the "GCDF and Marketing Fee".

29.    The GCDF and Marketing Fee was for services incurred prior to Exxon Mobil placing the gas into a marketable or merchantable condition.  The GCDF and Marketing Fee did not enhance an already-marketable product.  If any portion of the GDCF and Marketing Fee was for services performed after the gas became a marketable product, the GDCF and Marketing Fee deducted from the royalty exceeded the actual costs incurred by Exxon Mobil.  Furthermore, the GCDF and Marketing Fee was not reasonable and did not increase the royalties due Plaintiff Class proportionately to the GCDF and Marketing Fee.

30.    Prior to Exxon Mobil assuming operation of the wells previously operated by Exxon and Mobil, the GCDF and Marketing Fee was deducted from the gross value of the gas prior to royalties being paid to Plaintiff Class.  These GCDF and Marketing Fees were fraudulently concealed from the Plaintiff Class by: a) falsely reporting the gross value and price of the gas sold on royalty check stubs; b) falsely reporting on the royalty check stubs that no deductions had been made; c) falsely reporting that the only deductions made were for taxes and d) by otherwise using said check stubs and 1099's to deceive Plaintiff Class into believing that no deduction had been made from their royalties for GCDF and Marketing Fees.

31.    Beginning no later than August 2001, Exxon Mobil reported "deductions" on their royalty payment stubs as a separate entry from gross production taxes.  These "deductions" were identified by Exxon Mobil as "costs incurred between the point of production and the sales point".  This identification was made in an information sheet which Exxon Mobil sent to royalty owners titled "How to Read the Check Stub."

32.    Deductions from royalty payments made by Exxon Mobil for "costs incurred between the point of production and the sales point" are known by Exxon Mobil to be improper, as evidenced

7

by its statements to the Court as reported in *Exxon Corp. v. U.S.*, 33 Fed.Cl. 250, 271 (1995), wherein Exxon advised the Court that field activities including separation, dehydration, compression and treatment are necessary to produce the first marketable product.

33.    Upon information and belief, Exxon Mobil used Exxon Mobil-related companies' gathering lines, gathering systems and/or other gas pipelines to skim unreported volumes of gas and other minerals from the Exxon Mobil Wells. These unreported volumes are commonly referred to as gas overages, system overages or system gains ("System Gains"). Exxon Mobil, and/or one or more of the Exxon Mobil-related companies, converted these volumes for Exxon Mobil's own benefit and Exxon Mobil never reported these volumes to the Plaintiff Class and never paid royalties on the proceeds from the sale of these volumes. These System Gains were fraudulently concealed from the Plaintiff Class by falsely reporting the gross volume produced on royalty check stubs and by using said check stubs to deceive the Plaintiff Class into believing that they had been paid royalties on all minerals produced from the Exxon Mobil Wells.

34.    In violation of the implied covenant to market contained in the oil and gas leases and/or pooling orders, and in violation of its fiduciary duties, Exxon Mobil has failed, and continues to fail, to make a diligent effort to secure the best terms available for the sale of oil, gas and other minerals (not limited to hydrocarbons) from the Exxon Mobil Wells, and the Plaintiff Class has received reduced production royalties from the Exxon Mobil Wells as a result thereof. In addition, Exxon Mobil has failed to pay the Plaintiff Class royalties on the full value of oil, gas and other minerals produced from the Exxon Mobil Wells by: 1) structuring and implementing sales of unit production in a self dealing manner; 2) charging to the royalty owners improper and excessive fees; 3) not accounting for and paying royalty on all minerals produced; 4) paying royalty at below-market

8

prices; and 5) otherwise not paying royalty on the true value of the minerals taken from the Exxon Mobil Wells.

35.    Exxon Mobil has fraudulently misrepresented and misled the Plaintiff Class into believing they had been paid on the full value of oil, gas and other minerals produced from the Exxon Mobil Wells by falsifying and creating misleading check stubs, 1099's, correspondence and other communications sent to the Plaintiff Class related to the payment of royalties.

36.    Exxon Mobil knew that the checkstub and 1099 representations were false and intended that the Plaintiff Class rely upon the misrepresentations made on the checkstubs and 1099's. The misrepresentations of Exxon Mobil were intentional, or were made with reckless disregard for the truth.

37.    The Plaintiff Class did rely upon the information on their checkstubs as being correct, and were damaged by relying on Exxon Mobil's misrepresentation.

38.    The tortious acts of Exxon Mobil go far beyond simple breach of contract and amount to independent torts resulting in damages to the Plaintiff Class.

39.    The self-dealing, fraud, deceit and other breaches described herein served to financially benefit Exxon Mobil at the expense and to the detriment of the Plaintiff Class through the reduction of value the Plaintiff Class received for their royalty on production from the Exxon Mobil Wells.

40.    Plaintiffs did not learn of these torts until less than two years before the filing of this lawsuit.

## I. BREACH OF CONTRACT

The allegations set forth above are incorporated herein by reference.

41.    Exxon Mobil has breached its contractual obligations and duties owed to the Plaintiff Class concerning the payment of royalties.

42.    The Plaintiff Class has been damaged in excess of $10,000.00 by Exxon Mobil's breach of contracts.

## II. BREACH OF FIDUCIARY DUTIES

The allegations set forth above are incorporated herein by reference.

43.    Exxon Mobil is in a fiduciary relationship with Plaintiff Class created by the oil and gas leases, pooling orders and the unitization orders of the Oklahoma Corporation Commission, and by virtue of the historical relationship of the parties.

44.    Exxon Mobil has breached its fiduciary duties and obligations owed to the Plaintiff Class concerning the payment of royalties

45.    The Plaintiff Class has been damaged in excess of $10,000.00 by the breach of fiduciary duties.

## III. BREACH OF IMPLIED DUTY TO MARKET

The allegations set forth above are incorporated herein by reference.

46.    Exxon Mobil has a duty, implied in every oil and gas lease and polling order, to market minerals from the Exxon Mobil Wells at the best price reasonably available.

47.    Exxon Mobil's actions constitute a breach of its duties and obligations owed to the Plaintiff Class concerning the payment of royalties.

48.    Exxon Mobil intentionally violated the rights of the Plaintiff Class.

49.    The Plaintiff Class has been damaged in excess of $10,000.00 by Exxon Mobil's breach of the implied duties to market.

## IV. BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

The allegations set forth above are incorporated herein by reference.

50. Exxon Mobil owes the Plaintiff Class the obligation of good faith and the duty of fair dealing in the performance of its express and implied obligations, and as operator of the Exxon Mobil Wells.

51. Exxon Mobil has violated its obligation of good faith and the duty of fair dealing owed to the Plaintiff Class.

52. Exxon Mobil intentionally violated the rights of the Plaintiff Class.

53. The Plaintiff Class has been damaged in excess of $10,000.00 by Exxon Mobil's breach of duty of good faith and fair dealing.

## V. ACTUAL FRAUD

The allegations set forth above are incorporated herein by reference.

54. Exxon Mobil falsely represented to the Plaintiff Class that it was paying royalties properly.

55. Exxon Mobil knew that the royalties were not in fact being paid properly.

56. Exxon Mobil made false representations that royalties were properly being paid with the intent that the Plaintiff Class would rely on them to its detriment.

57. The Plaintiff Class justifiably relied on the false representations of Exxon Mobil.

58. The Plaintiff Class was damaged by relying on such false representations.

59. Exxon Mobil intentionally violated the rights of the Plaintiff Class.

60. The Plaintiff Class has been damaged in excess of $10,000.00 by Defendant's fraud.

11

## VI. DECEIT

The allegations set forth above are incorporated herein by reference.

61.   Exxon Mobil falsely represented to the Plaintiff Class that Exxon Mobil was paying royalties properly.

62.   Exxon Mobil knew that the royalties were not in fact being paid properly.

63.   Exxon Mobil disclosed only a portion of the information regarding the true royalties due from Exxon Mobil Wells.

64.   Exxon Mobil made false representations, or failed to fully disclose the truth, concerning the proper amount of royalties due with the intent that the Plaintiff Class would rely on such representations to its detriment.

65.   The Plaintiff Class justifiably relied on the false representations of Exxon Mobil.

66.   The Plaintiff Class was damaged by relying on such representations.

67.   Exxon Mobil intentionally violated the rights of the Plaintiff Class.

68.   The Plaintiff Class has been damaged in excess of $10,000.00 by Exxon Mobil's deceit.

## VII. CONSTRUCTIVE FRAUD

The allegations set forth above are incorporated herein by reference.

69.   The Plaintiff Class has the right to be informed of the actual sales price, volume and value of the minerals upon which the royalty is to be paid.

70.   Exxon Mobil concealed from the Plaintiff Class the true sales price, volume and value of the minerals upon which the royalty was due.

71.   The Plaintiff Class justifiably relied on the false representations of Exxon Mobil..

72.   The Plaintiff Class was damaged by relying on Exxon Mobil's concealments.

73.   The Plaintiff Class has been damaged in excess of $10,000.00 by Exxon Mobil's fraud.

## VIII. CONVERSION

The allegations set forth above are incorporated herein by reference.

74.   Exxon Mobil intentionally and wrongfully retained production proceeds belonging to the Plaintiff Class.

75.   Exxon Mobil's actions constitute conversion of the royalties owed to the Plaintiff Class.

76.   The Plaintiff Class has been damaged in excess of $10,000.00 by this conversion.

## IX. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

The allegations set forth above are incorporated herein by reference.

77.   Exxon Mobil and its related affiliates, were aware of the special contractual and business relations between other unnamed working interest owners and the Plaintiff Class. Exxon Mobil was aware that these relationships were vitally important to the Plaintiff Class. Exxon Mobil has tortiously interfered with the special business relations between the other working interest owners and the Plaintiff Class with malice, ill will and for the personal gain of Exxon Mobil.

78.   The Plaintiff Class has been damaged in excess of $10,000.00 by the tortious interference with business relations by Exxon Mobil.

## X. UNJUST ENRICHMENT

The allegations set forth above are incorporated herein by reference.

79.   The self-dealing, fraud, deceit and other breaches described herein served to financially benefit Exxon Mobil at the expense and to the detriment of the Plaintiff Class through the reduction of value the Plaintiff Class received for their royalty on production from the Exxon Mobil Wells.

80.   Exxon Mobil has been unjustly enriched as a result of its improper actions.  Exxon Mobil should not be allowed to retain any portion of its ill-gotten gains, or profits on those ill-gotten gains.  Exxon Mobil should be required to disgorge and pay as additional damages, all such gains, and profits on such gains.

## XI. CIVIL CONSPIRACY

81.   Exxon Mobil, the Exxon Mobil-related and affiliated companies, and other unnamed individuals and companies conspired: (1) to deprive the Plaintiff Class of royalties by the fraudulent skimming schemes (the GCDF and Marketing Fee and the System Gains) initiated by Exxon Mobil; and (2) to continue fraudulently and deceptively concealing these schemes by falsely reporting information, or failing to report information, to the Plaintiff Class.

82.   As a result of this conspiracy, and as a result of the mining partnerships, joint ventures and principal/agent relationships previously described, Exxon Mobil, the Exxon Mobil-related and affiliated companies, and other unnamed individuals and companies are jointly and severally liable for the damages of the Plaintiff Class.

83.   The Plaintiff Class has been damaged in excess of $10,000.00 by this conspiracy and other relationships.

## XII. PUNITIVE DAMAGES

84.   The tortious acts of Exxon Mobil described herein were done intentionally, maliciously and with utter disregard for the rights of the Plaintiff Class.  Exxon Mobil should pay punitive damages as punishment and as an example to others of like mind.

## TEMPORARY INJUNCTION

The allegations set forth above are incorporated herein by reference.

14

85.   The putative Class members are, for the most part, owners of small mineral interests.

86.   Exxon Mobil must be restrained from contacting any putative Class member concerning any issue herein, unless the Court is specifically advised of the proposed communication and approves the content and form of such communication. This judicial scrutiny is necessary to prevent the potential for inadequate, misleading, incomplete, or erroneous representations and communications and to prevent any intimidation, annoyance, harassment, or undue influence.

87.   This Court has discretion to so restrain Exxon Mobil pursuant to 12 O.S. §2023(d)(2), which generally provides the Court with authority to enter appropriate orders for the protection of putative members of the Class and for the fair conduct of the action.

88.   Exxon Mobil maintains files containing the names and addresses of the putative Class members. If Exxon Mobil is allowed to contact the putative Class members in an attempt to settle the above claims for inadequate consideration, the damage to the putative Class members would be irreparable and monetary damages would be insufficient or simply unavailable to compensate them. The putative Class members do not have another plain, adequate and speedy remedy at law to protect their interests.

89.   In view of the fact that Exxon Mobil  has concealed its actions from the putative Class members for many years, no detriment will result to Exxon Mobil from such an order.  The putative Class members would receive the protection of 12 O.S. § 2023(e) which requires that no compromise of any claims be made without approval of the Court upon appropriate notice to all Class members.

WHEREFORE, Plaintiffs seek an order of this Court granting them judgment against the Exxon Mobil for: a) actual damages in excess of $10,000.00, b) punitive damages, c) interest, d) disgorgement of profits; and e) an order temporarily restraining Exxon Mobil, its agents, servants,

employees and attorneys, or persons acting for or on its behalf from contacting any putative Class

member concerning the status or settlement of any claims asserted herein until entry of an order

certifying or refusing to certify the Class, and h) any costs, damages or other relief permissible at law

or in equity.

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**

Respectfully submitted,

Robert J. Kee (OBA No. 4903)
Trippet & Kee
123 Douglas Avenue
P.O. Box 728
Beaver, OK 73932
Phone (405) 625-4597
E-mail jkee@ptsi.net


Douglas E. Burns (OBA No. 1342)
Terry L. Stowers (OBA No. 17453)
Daniel W. Peyton (OBA No. 19355)
Burns & Stowers, P.C.
1300 West Lindsey
Norman, OK 73069
Phone 405-360-6191
Fax 405-928-2019
E-mail lawfirm@burns-stowers.com

Terry J. Barker (OBA No. 12553)
Robert Pezold (OBA No. 7100)
Joseph C. Woltz (OBA No. 14341)
Gene G. Boerner, III (OBA No. 17577)
Pezold, Caruso, Barker & Woltz, P.C.
Suite 2800, 15 W. 6th Street
Tulsa, OK 74119-5415
Phone 918-584-0506
Fax 918-584-0720
E-mail tbarker@pcbw.com